**In re Raymond A. D'AREZZO**

**No. 84–399–M.P.**

Supreme Court of Rhode Island.

Feb. 20, 1987.

---

Terrance Turner, Nat. Assoc. of Government Employees, Cranston, for plaintiff.

Mark A. McSally, Cranston, for Town of North Kingstown.

## OPINION

KELLEHER, Justice.

This dispute to some extent involves the Law Enforcement Officers' Bill of Rights Act, which is set forth in G.L.1956 (1984 Reenactment) chapter 28.6 of title 42. The disputants are Patrolman Raymond A. D'Arezzo and Major John J. Leyden, who is chief of the North Kingstown police department and that municipality's director of public safety. Hereafter we shall refer to the patrolman and to the chief by their last names.

At issue are certain actions taken by a hearing committee organized pursuant to § 42–28.6–1(B). Our review is being made pursuant to the terms of § 42–28.6–12. D'Arezzo became a permanent member of the North Kingstown police department in early February 1982. Prior to that time he served a one-year probationary period as patrolman.

D'Arezzo's career as a member of North Kingstown's police department has been marked by a series of what might be called unusual incidents. In August of 1982 he was suspended without pay when his accidental spill of coffee onto the department's radio equipment severed all radio contact between headquarters and those on patrol. In late December 1982 he was again suspended when, as a result of his negligence, a police car crashed into a utility pole. His record also reflects another suspension for failing to appear at a court hearing, as well as a number of official reprimands for chronic tardiness in reporting for duty for the midnight shift.

In September of 1983 D'Arezzo called in sick when he was scheduled to work a special detail. When the department discovered that D'Arezzo was not sick, official charges were brought against him by Leyden, who recommended that D'Arezzo's police career be terminated. In November of 1983 a bill-of-rights hearing committee was convened to hear the charges pending against D'Arezzo. At this hearing he was found guilty of violating certain provisions of the departmental rules and regulations. The committee members imposed a punishment of forty hours extra duty without pay. In addition, they directed that D'Arezzo be placed on probation for a one-year period beginning on November 4, 1983. The committee recommended that if D'Arezzo was found guilty of violating any of the departmental rules and regulations during this period, his employment should be terminated without recourse except for his right to have the charges investigated

by the department's internal affairs officer. D'Arezzo appealed this action to the Washington County Superior Court.

Subsequently, on March 5, 1984, Leyden charged D'Arezzo with three additional violations of departmental regulations and a violation of his probation. The three departmental violations were (1) the "negligent firing" of a handgun inside police headquarters, (2) unnecessary abusive language and conduct exhibited to a motorist stopped for speeding, and (3) sleeping or loafing while on duty. Later, on March 21, 1984, a stipulated judgment was entered in the Superior Court litigation.

A second hearing committee was formulated for the purpose of hearing the March 1984 charges. It consisted of a ranking officer from the Warwick police department; one of D'Arezzo's fellow patrolmen; and the chairman of the panel, a patrolman from the Cumberland police department.[1] Testimony was taken at two hearings. The first one was in late May 1984 and the second took place approximately two weeks later, on June 19.

The panel dismissed the violation-of-probation charge and found D'Arezzo "not guilty" of the negligence charge and the abusive-language charge. He was found "guilty" of sleeping or loafing while on duty. As a result of the guilty verdict, the committee ordered that D'Arezzo be suspended without pay for twelve days.

In the first issue to resolve, D'Arezzo's argument that the town was out of time in filing its petition for writ of certiorari, D'Arezzo points to § 42–28.6–12, which provides in part that a municipality can seek a review of the hearing committee's final decision by a petition for writ of certiorari to this court made within twenty days of said decision.

■■■ However, D'Arezzo apparently overlooks § 42–28.6–11, which also provides that any decision, order, or action taken by the hearing board shall be in writing. The record indicates that D'Arezzo measures the twenty days from the time the hearing is concluded and the committee makes an oral announcement about its conclusions. The announcement came on June 19, 1984; however, the committee's written decision was not presented until July 24, 1984, and the petition for certiorari was filed by the town on August 10, 1984. Statutes relating to the same subject matter should be considered together so that they will harmonize with each other and be consistent with their general objective scope. *State v. Ahmadjian*, 438 A.2d 1070 (R.I.1981). When §§ 42–28.6–11 and –12 are considered together, the clear implication to be drawn therefrom is that the twenty-day period begins to run once the written decision is published, not when the oral decision is announced. Consequently, Leyden's petition is timely.

The 1984 hearing committee gave short shrift to Leyden's reliance on D'Arezzo's probationary status because shortly after the hearing began, the 1984 committee announced that it was dismissing the violation-of-probation charge; and after dismissing this charge, the committee proceeded to consider testimony on the other three charges. The policeman's bill of rights legislation has bestowed on a hearing committee a superabundance of discretion in the modification, in "whole or in part," or the "reversal" of charges filed by a police officer's superiors. *See* § 42–28.6–11. The panel, however, in considering D'Arezzo's second bite at the apple, could not ignore

---

1. General Laws 1956 (1984 Reenactment) § 42–28.6–1(B) establishes the composition of the hearing panel. Membership on the panel is to consist of three individuals who are employed within the state as law enforcement officers. One member is to be selected by the chief or the highest ranking officer of the particular enforcement agency concerned, one member is to be selected by the aggrieved officer, and the third member is to be selected by the other two. In the event that an agreement cannot be reached by the two current members, application will be made to the Superior Court and the presiding justice will appoint the third member. In this instance, since there was no agreement between the two nominated members of the panel, the presiding justice appointed a patrolman from Cumberland's police department who became chairman of the panel.

D'Arezzo's probationary status or the stipulated judgment, the terms of which were agreed to by the attorney for the municipality and D'Arezzo's then counsel.

■ Initially we would point out that any exercise of a hearing committee's considerable powers in revising or vacating previously imposed punishments is grounded on the statutory condition that the officer seeking relief is a "permanent employee." Section 42–28.6–1(A). When D'Arezzo took his nighttime nap, he was not a permanent employee of the North Kingstown police department because he was in the midst of a second one-year probationary period. He had appealed to the Superior Court in accordance with certain provisions in § 45–20–1.1, which specifically states that "an appeal shall not stay the operation of the decision appealed from." Section 14–1–11 of the 1974 revised ordinances of the town of North Kingstown provides that the initial appointment of an individual as a member of the "permanent police force" shall be provisional for a period of one year and that during that period each appointee shall temporarily possess all the powers of the position to which he or she is appointed, but such an individual shall not be a "member of the permanent police force" during such probationary period. The 1983 hearing panel was acutely aware that D'Arezzo's second probationary status could lead to a termination of his career, but the panel, after declaring that termination should come only after an investigation, noted that they were relying on the "integrity" of Leyden and Lieutenant James L. Wynne, the department's internal affairs officer.

It is clear that the stipulated judgment represents a compromise between Leyden's attorney and D'Arezzo's attorney in the light of concern expressed by D'Arezzo's then counsel that his client's career might come to an abrupt end because of violations of such regulations as those that govern the length of hair or the grooming of a mustache, not to mention the trim of the uniform.

■ Thus it was that the stipulated judgment, while not affording D'Arezzo the best of all worlds that is given to a permanent officer by chapter 28.6 of title 42, did grant D'Arezzo a forum where the opportunity for a second hearing would take place before a panel, one member of which would be chosen by him, on any violation occurring during the probationary period established by the 1983 panel. The judgment also stipulated that D'Arezzo was to be considered on probation for a year beginning November 3, 1983. If the 1984 panel had found D'Arezzo not guilty of all three charges presented by Leyden, he would have survived his probationary status and returned to the ranks of the other permanently employed members of North Kingstown's police department. Once the panel, by a two-to-one vote, returned the guilty verdict on the "sleeping or loafing while on duty" charge, Leyden had every right to proceed with his previously announced plan to dismiss D'Arezzo from the force.

In taking this position, we would not wish to denigrate the hearing committees, but we take this occasion to emphasize that a consent judgment of a Superior Court voluntarily entered into by parties who are represented by counsel constitutes a binding agreement that may not be totally disregarded by a bill-of-rights hearing committee. The reach of such a judgment is a matter that, in our opinion, lies within the exclusive domain of the judicial branch of our state's government.

The petition for writ of certiorari is granted. The decision of the 1984 hearing committee insofar as it dismisses the probation-violation count is quashed, and the case is remanded to the North Kingstown police department where its chief and/or director of public safety will pursue whatever course of action in this dispute he deems appropriate.